<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FREIGHT CONNECTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> EXPRESS HOUND, LLC; KING CARGO, LTD.; PROGRESSIVE INSURANCE, INC.; JOHN DOES AND XYZ CORPS, <br><br> Defendants. | No. 22cv1668 (EP) (AME) <br><br> **OPINION** |

<u>**Evelyn Padin, U.S.D.J.**</u>

Presently before the Court is Defendant Express Hound, LLC's ("Express Hound's") motion to dismiss Plaintiff Freight Connections, Inc.'s complaint under Federal Rule of Civil Procedure 12(b)(6). D.E. 3. The Court has reviewed the parties' submissions and decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons stated below, Express Hound's motion is **GRANTED**.

**I.   BACKGROUND**[1]

    **A.  Factual Background**

On or about December 11, 2020, Plaintiff engaged Express Hound to transport mixed freight under Bill of Lading No. 0025464 from Ridgefield, New Jersey to Houston, Texas. D.E. 1-2 ¶ 6. On or about December 17, 2020, Plaintiff "tendered the shipment from its facility in Ridgefield, New Jersey to Express [Hound]." *Id.* ¶ 7. Express Hound thereafter "utilized the

---

[1] For the purposes of this Opinion, the Court accepts as true all of the Complaint's well-pled factual allegations.

services of King Cargo as carrier to transport the goods via truck." *Id.* ¶ 8. Express Hound never informed Plaintiff about its use of King Cargo to transport the shipment. *Id.* 1-2 ¶ 9. The King Cargo employee/truck driver who was responsible for transporting the goods to Houston, Texas improperly diverted the truck to Orlando, Florida. *Id.* ¶ 10. When the truck arrived in "Texas, it was determined that the seal on the truck was broken and goods with a total value of $73,308.71 were missing from the truck as a result of an apparent theft by the driver." *Id.* ¶ 12.

Prior to the foregoing incident, on July 20, 2020, Plaintiff and Express Hound entered into a Broker-Shipper Agreement that, *inter alia*, refers to Express Hound as "BROKER" and Plaintiff as "SHIPPER," and states that Express Hound would "maintain cargo insurance in the amount of $100,000 as supplemental contingency insurance to compensate [Plaintiff] for loss or damage to shipments tendered to [Express Hound's] transportation services." *Id.* ¶ 14.

**B. Procedural History**

Plaintiff initiated this action in New Jersey Superior Court on or about January 24, 2022. Plaintiff's ten-count complaint asserts the following causes of action: (1) Breach of Contract (First Count), against all defendants; (2) Breach of the Covenant of Good Faith and Fair Dealing (Second Count), against all defendants; (3) Negligence (Third Count), against Express Hound and King Cargo; (4) Agency (Fourth Count), against Express Hound; (5) Negligent Hiring, Training, Supervision and Retention (Fifth Count), against Express Hound; (6) Agency (Sixth Count), against King Cargo; (7) Negligent Hiring, Training, Supervision, and Retention (Seventh Count), against King Cargo; (8)Theft (Eighth Count), against King Cargo; (9) Conversion (Ninth Count), against Express Hound and King Cargo; and (10) Declaratory Judgment, against King Cargo's insurance carrier, Progressive Insurance. D.E. 1-2.

On March 24, 2022, Express Hound removed this matter to this Court. Express Hound's notice of removal correctly notes that "[t]he recovery sought [by Plaintiff in this matter] is for the alleged loss of cargo that was to be transported by [King Cargo] from Ridgefield, New Jersey to Houston, Texas under state law theories of breach of contract, negligence, and conversion." D.E. 1-1 ¶ 2. Express Hound's removal notice also accurately notes that "[u]nder well-established law from jurisdictions across the country, state law claims arising from the loss or damage to cargo transported via interstate commerce are preempted by federal law, including by . . . 49 U.S.C. § 14706(a)(1) (the 'Carmack Amendment')." *Id.* ¶ 3. Plaintiff has not challenged the propriety of removal, and the Court agrees that Plaintiff's claims are subject to federal preemption.

On April 6, 2022, Express Hound moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 3. On May 5, 2022, Plaintiff filed its opposition to the same. D.E. 5. Express Hound filed its reply on the same day. D.E. 6.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. However, the allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. As the moving party, the defendant bears the burden of showing that no

3

claim has been stated. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of the motion, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

### III.   ANALYSIS

Plaintiff, by way of this lawsuit, seeks recovery for the financial losses it sustained "as a result of an apparent theft by [King Cargo's truck] driver" during the interstate shipment of its goods. *See* D.E. 1-2 at ¶ 12. Plaintiff's complaint asserts ten separate state law claims as bases for relief. Express Hound argues that dismissal of Plaintiff's complaint, in its entirety, is appropriate because the sole cause of action that Plaintiff may assert based on the facts alleged in its complaint is a federal Carmack Amendment claim, and its complaint contains no such allegation. *See* D.E. 3-1 at 3; D.E. 6 at 3. The Court agrees.

The Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, governs the field of interstate shipping. *Inter Metals Grp. v. Centrans Marine Shipping*, No. CV 20-7424, 2022 WL 489404, at *2 (D.N.J. Feb. 17, 2022). The Amendment "preempts all state law claims for compensation for the loss of or damage to goods shipped by a ground carrier in interstate commerce." *Certain Underwriters at Interest at Lloyds of London v. Untied Parcel Service of America, Inc.*, 762 F.3d 332, 333 (3d Cir. 2014); *accord Phoenix Assurance Co. v. K-Mart Corp.*, 977 F. Supp. 319, 324 (D.N.J. 1997) (the Amendment "provides an exclusive remedy for the loss of goods transported in interstate commerce by motor carriers and freight forwarders."); *see also AMG Res. Corp. v. Wooster Motor Ways, Inc.*, 796 F. App'x 96, 100 (3d Cir. 2020) ("The modern Carmack Amendment still preempts all state regulation regarding the loss or injury to goods in commerce, so that the shipper's recourse is only against carriers.").

Stated simply, the lone cause of action which Plaintiff may assert based on the facts alleged in its complaint is a federal Carmack Amendment claim.  Because Plaintiff's complaint contains only state law claims that are preempted by that Amendment, the Court will dismiss the complaint, in its entirety.  *Inter Metals Grp.*, 2022 WL 489404, at *3-4 (dismissing plaintiff's state law claims under Rule 12(b)(6) because those claims were, *inter alia*, preempted by the Carmack Amendment).

Express Hound further avers that its dismissal from this matter, specifically, must be with prejudice because the facts alleged in Plaintiff's complaint show that Express Hound was, at all relevant times, acting merely as a "broker" (who cannot be held liable under the Carmack Amendment), as opposed to a "carrier" (who can be liable under the Amendment).  D.E. 3-1 at 11.  For the reasons that follow, the Court cannot conclusively rule, at this time, on this issue.  Moreover, because there are facts alleged in the complaint which suggest that Express Hound may have acted as a carrier for purposes of Plaintiff asserting a Carmack Amendment against it, the Court will decline to enter prejudicial dismissal against Express Hound at this time.

To be clear, liability under the Carmack Amendment extends to any "carrier" providing transportation or service. 49 U.S.C. § 14706(a)(1).  "To establish a *prima facie* case against a carrier under the Carmack Amendment, a shipper must prove (1) delivery of goods to the initial carrier in good condition, (2) damage of the goods before delivery to their final destination, and (3) the amount of the damages." *Mrs. Ressler's Food Prod. v. KZY Logistics LLC*, 675 F. App'x 136, 140 (3d Cir. 2017) (internal quotation omitted).  Here, Plaintiff's complaint alleges that Plaintiff was a shipper who delivered its goods to Express Hound in Ridgefield, New Jersey in good condition, that some of those goods were stolen before delivery to their final destination in Dallas, Texas, and that Plaintiff has been damaged in the amount of $73,308.71 as a result.  The

only issue that is unclear based on the factual allegations in Plaintiff's current pleading is whether Express Hound assumed the role of carrier at any point in the transaction.

Under the Carmack Amendment, a "carrier" includes "a motor carrier," which is defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(3), (14). The term "transportation" includes both the actual movement of property and "services related to that movement," including arranging delivery of property. 49 U.S.C. § 13102(23). On the other hand, a "broker" is "a person, other than a motor carrier [that] . . . sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2); *see also* 49 C.F.R. § 371.2.

Importantly, "[i]f [an entity] accepted responsibility for ensuring delivery of goods, regardless of who actually transported them, then [the entity] qualifies as a carrier. If, however, [the entity] merely agreed to locate and hire a third party to transport the machines, then it was acting as a broker." *Nipponkoa Ins. Co., Ltd. v. C.H. Robinson Worldwide, Inc.*, No. 09 Civ. 2365(PGG), 2011 WL 671747, at *7 (S.D.N.Y. Feb. 18, 2011) (quoting *CGU Int'l Ins., PLC v. Keystone Lines Corp.*, No. 02-3751, 2004 WL 1047982, at * 2 (N.D. Cal. May 5, 2004)); *accord Tryg Ins. v. C.H. Robinson Worldwide, Inc.*, No. CV155343MASTJB, 2017 WL 5725057, at *6 (D.N.J. Nov. 28, 2017), *aff'd*, 767 F. App'x 284 (3d Cir. 2019).

Courts consider various factors to determine whether a party is in fact a "motor carrier" or a "broker" under the Carmack Amendment. *See Pelletron Corp. v. C.H. Robinson Worldwide*, *Inc.*, No. 09-2365, 2012 WL 3104845, at *3-4 (E.D. Pa. July 31, 2012). This includes: (1) whether the entity promised to personally perform the transport and therefore legally bound itself to transport; (2) the type of services the entity offers; (3) whether the entity held itself out to the

public as the actual transporter of goods; and (4) whether the entity's only role was to secure a third party to ship plaintiff's goods. *Id.* To that end, the inquiry into whether an entity is a "carrier" or "broker" is inherently fact intensive. *See Nipponkoa Ins.*, 2011 WL 671747; *Tryg Ins.*, 2017 WL 5725057.

Here, Plaintiff's complaint expressly alleges that Plaintiff engaged Express Hound to carry a shipment of mixed freight under a bill of lading and that Express Hound accepted those goods at its facility in Ridgefield, New Jersey. D.E. 1-2 ¶¶ 6, 7. These two factual allegations suggest that Express Hound may have acted as carrier during this particular transaction. *See* 49 U.S.C. § 14706(a)(1) ("A carrier providing transportation or service . . . shall issue a receipt or bill of landing for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service . . . are liable to the person entitled to recover under the receipt or bill of landing."). While the Plaintiff's complaint suggests that Express Hound *also* provided "broker"-related services to Plaintiff – including with respect to the transaction underlying this lawsuit[2] – the Court is not in a position, at this time, to definitively rule on the "inherently fact intensive" issue of whether Express Hound's role in this particular transaction was limited to that of a broker. It will accordingly decline to dismiss Express Hound from this action with prejudice at this time.

Finally, Plaintiff avers that in the event the Court determines that dismissal of its complaint is appropriate (which, for the reasons discussed above, it does so find), then Plaintiff "must be granted leave to amend its Complaint to pursue its claims under the Carmack Amendment." D.E.

---

[2] The Court recognizes that if Freight Connections is ultimately found to be nothing other than a "broker" in the transaction at issue, it would have other claim preclusion defenses available to it under the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501(c)(1). In light of the Court's current rulings, however, no further discussion on this point is required at this time.

5 at 5. The Court agrees. Plaintiff will be afforded the opportunity to amend its complaint to address the pleading deficiencies identified herein. Leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). There has been no prior dismissal of the complaint, Plaintiff has not previously amended its pleadings, and Express Hound has not demonstrated that it would be prejudicial, futile, or otherwise unfair for Plaintiff to be given leave to amend. It is consistent with principles of fairness and justice to afford Plaintiff an opportunity to do so. Plaintiff may file an amended complaint within 90 days of the date of this Opinion.

## IV.  CONCLUSION

For the reasons above, Freight Connections motion to dismiss (D.E. 3) is **GRANTED**. Plaintiff is afforded 90 days to file an amended complaint to address the pleading deficiencies identified herein. An appropriate order follows.

Dated: October 27, 2022

_____
Evelyn Padin, U.S.D.J.